Stephen R. Jaffe    SBN 48539
The Jaffe Law Firm
1 Sansome Street, Suite 3500
San Francisco, CA 94104
stephen.r.jaffe@jaffetriallaw.com
415.618.0100
Attorneys for Plaintiff JORMA NOTTBOHM

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO - OAKLAND DIVISION

| | |
|---|---|
| **JORMA NOTTBOIGM,** | **Case No.** _____ |
| Plaintiff, | **COMPLAINT FOR:** |
| vs. | |
| **TESLA, INC**., a Delaware corporation | **[1] DECLARATORY RELIEF RE: MANDATORY ARBITRATION OF CLAIMS;** |
| Defendant. | **[2] DISCRIMINATION ON ACCOUNT OF DISABILITY (California Fair Employment & Housing Act);** |
| | **[3] FAILURE TO ACCOMMODATE DISABILITY (California Fair Employment & Housing Act);** |
| | **[4] FAILURE TO ENGAGE IN INTERACTIVE PROCESS (California Fair Employment & Housing Act);** |
| | **[5] UNLAWFUL WORKPLACE RETALIATION; (Labor Code §1102.5);** |
| | **[6] NEGLIGENT HIRING AND RETENTION;** |
| | **[7] WRONGFUL CONSTRUCTIVE TERMINATION OF EMPLOYMENT;** |
| | **[8] VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE §17200;** |
| | **[9] WRONGFUL TERMINATION AGAINST PUBLIC POLICY** |

1
COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES

JORMA NOTTBOHM, alleges:

## PARTIES, JURISDICTION and VENUE

1. Plaintiff is a natural person and citizen/resident of California.

2. The defendant TESLA, INC. ("Tesla") is a corporation organized and existing under the laws of the State of Delaware.

3. This court has jurisdiction of this action under 28 USC §1332 (diversity).

4. Venue in this court is proper because the facts and events alleged herein occurred in the City of Fremont, County of Alameda, State of California, within the Northern District of California.

5. The amount in controversy in this matter, exclusive of interest, costs and attorney fees, exceeds $75,000.

## FACTS COMMON TO ALL CAUSES OF ACTION

6. On or about March 31, 2020, plaintiff was recruited by Furheen Mohamad for employment by Tesla.

7. On or about June 18, 2020, at 8:24 PM, plaintiff was offered employment in writing by Tesla. A true and correct copy of the written offer of employment is Exhibit A to this complaint.

8. On or about June 18, 2020, at 8:34 PM, plaintiff accepted the offer of employment from Tesla, thus forming an employer-employee relationship between plaintiff and Tesla.

9. Subsequent to plaintiff's acceptance of employment by Tesla, plaintiff was presented with documents to execute as part of Tesla's onboarding procedure. One document presented to plaintiff was an agreement compelling plaintiff to arbitrate claims and disputes that arose out of his employment by Tesla and purporting to waive his right to seek remedies for employment claims and disputes in court. Plaintiff was told that signing the arbitration agreement was a condition of him being employed by Tesla.

2
**COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES**

10. Believing his refusal to sign an arbitration agreement would result in his loss of employment by Tesla, plaintiff believed he had no choice whether to sign Exhibit B, which he did on or about June 18, 2020, at 8:34 PM.

11. On or about June 29, 2020, having accepted employment at Tesla, plaintiff began working at Tesla's facility. Plaintiff's initial job title was "Associate Service Manager, Front House."

12. On or about August 20, 2020, plaintiff began to suffer from medical issues involving his knees. With Tesla's knowledge and approval, Plaintiff took a leave from work at Tesla from May 12, 2021, to August 8, 2021, for surgical repair and medical treatment of his left knee.

13. Following his return to work from the authorized medical leave of absence, plaintiff began to experience pain and symptoms in his right knee, *i.e.*, the knee which had not been the subject of the previous surgery.

14. Fearing that requesting another authorized medical leave for a repair surgery would jeopardize his future employment at Tesla, plaintiff continued to work at Tesla, albeit in great pain and discomfort.

15. Eventually, solely on account of his disability, as well known to Tesla and Sheik, it became difficult for plaintiff to stand for any length of time. During this time, plaintiff became the target of frequent and unjustified criticism and humiliation by plaintiff's immediate supervisor, Fazulul Haque Sheik ("Sheik") because of plaintiff's temporary disability. Sheik's criticisms of plaintiff, made in the presence of plaintiff's coworkers, focused on plaintiff's medical issues involving his knees. On occasion, Sheik stated to Plaintiff, "You don't need your knee to think."

16. On or about November 5, 2021, plaintiff asked Sheik whether he could sit rather than stand during a staff meeting. Sheik refused plaintiff permission to sit during

**COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES**

meetings.  Instead, knowing that standing caused plaintiff severe in pain and discomfort and could not stand for any length of time, Sheik cruelly, sadistically, vindictively and spitefully instructed Jeff Johnson, one of plaintiff's coworkers, to remove plaintiff's desk chair from plaintiff's workstation, so that it was impossible for plaintiff to sit at any time.

17. **On November 5th, 2020, plaintiff had an MRI procedure done on his right knee. The MRI result showed that he needed right knee surgery immediately. Unfortunately, due to COVID-19 restrictions, elective surgeries, including knee replacements and repairs, were being postponed. As a result, plaintiff continued to work at Tesla, enduring great pain and hardship because of the lack of the requested reasonable accommodation, which has been refused by Sheik and Tesla.**

18. On or about December 23, 2021, as recommended by his physician, plaintiff took an approved medical leave of absence to have surgery on his right knee, which surgery occurred on December 27, 2021.

19. While on this approved medical leave, Plaintiff attempted to transfer to a different location within the company in which he would not be supervised by Sheik. However, Sheik gave Plaintiff a false negative review for the short period he worked since his first surgery, which false negative review prevented Plaintiff from being able to move to a new location. The review from Sheik contained multiple false statements and conclusions which caused Plaintiffs severe and substantial emotional distress, causing it to be necessary for Plaintiff to engage the services of a psychotherapist.

20. Due to all of the foregoing events and actions of Tesla and Sheik, on June 30, 2022, Plaintiff reasonably concluded he had no option other than to resign his employment by Tesla, which he ultimately did.

**COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES**

21. At all times mentioned herein, Plaintiff performed all his employment duties and responsibilities in exemplary fashion and to the best of his abilities.

## **TESLA'S WAIVER OF RIGHT TO ARBITRATE**

22. On November 7, 2022, following the separation of his employment from Tesla, acting in good faith, plaintiff initiated an arbitration proceeding with Judicial Arbitration and Mediation Services ("JAMS"), JAMS arbitration Demand Ref. 5100000746. A true and correct copy of the plaintiff's Demand for Arbitration is Exhibit B to this complaint.

23. On November 7, 2022, Tesla's counsel, Alif Mia, was served with a true and correct copy of Exhibit B.  A true and correct copy of the email transmitting service of Exhibit B is Exhibit C to this complaint.

24. On November 15, 2022, Mr. Mia stated to plaintiff's counsel that he had not received Exhibits B and C and requested copies be sent to him. Plaintiff's counsel then forwarded Exhibits B and C to Tesla and Alif Mia *a second time*. A true and correct copy of the email forwarding the November 7, 2022 email, constituting *a second service* service of Exhibit B is Exhibit D to this complaint.

25. On December 21, 2022,  counsel for plaintiff received an email from Timothy Kim. In this email, Mr. Kim states he is now counsel for Tesla in this matter. A true and correct copy of Mr. Kim's email of December 21, 2022, is  Exhibit E to this complaint.

26. Between April 15, 2022, and the filing of this complaint, counsel for plaintiff exchanged *at least 39 email communications* with counsel for Tesla regarding Plaintiff's claims asserted in this complaint and, in particular (after November 7, 2022), whether Tesla intended to respond to plaintiff's demand in arbitration which had been twice served on it.

At no time between service of plaintiff's demand for arbitration and the filing of this complaint has Tesla (a) filed any response to plaintiff's demand for arbitration and/or (b) paid the arbitration fees under JAMS Employment Arbitration Rules and California law which in was required to pay.

27. Pursuant to California Code of Civil Procedure §1281.97(a) *et seq.*, Tesla's failure to respond to plaintiff's demand for arbitration and/or to pay the arbitration fees it was required to pay under California law and JAMS Employment Arbitration Rules, to the extent it ever had any such right at all, Tesla has irrevocably waived its right to compel the arbitration of the claims asserted by plaintiff in this action.

## FIRST CAUSE ACTION
## FOR DECLARATORY RELIEF

28. The plaintiff incorporates and realleges each and every allegation pleaded in Paragraphs 1 through 27, *supra*, of this complaint.

29. A genuine dispute between the parties has arisen on account of the foregoing facts. Plaintiff contends Tesla's failure to respond to his Demand for Arbitrations and, in particular, Tesla's failure to pay arbitration fees as required by California Code of Civil Procedure §1281.97(a) *et seq.,* constitutes an irrevocable waiver of Tesla's right to compel mandatory arbitration of Plaintiff's claims asserted in this action, to the extent it ever had any such right at all. On information and belief, Plaintiff alleges that Tesla contends Plaintiff is compelled to arbitrate his claims.

30. Plaintiff requests a declaration and ruling from this court that Tesla has irrevocably waived its right, if any, to compel Plaintiff to arbitrate the claims asserted in this action and that this action may proceed in this court under the Federal Rules of Civil Procedure.

**COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES**

**SECOND CAUSE OF ACTION**

**UNLAWFUL DISCRIMINATION ON ACCOUNT OF DISABILITY**

The plaintiff incorporates and realleges each and every allegation pleaded in Paragraphs 1 through 27, *supra*, of this complaint.

31. Plaintiff has satisfied all administrative requirements to bring his claims based on unlawful employment discrimination based on disability. On October 9, 2023, Plaintiff was issued a Right to Sue Letter from the California Civil Rights Agency (formerly named the Department of Fair Employment and Housing), CRD Matter Number: 202310-22261209.  A true and correct copy of the Right to Sue Letter and related documents ("Right To Sue") are attached to this complaint as Exhibit F. The Right to Sue was served on Tesla's counsel on October 9, 2023.

32. The actions of Tesla and Sheik, as alleged in this complaint, constitute unlawful discrimination in employment in violation of the California Fair Employment and Housing Act, Government Code §§12900–12996, as amended, causing plaintiff general and special damages in excess of $75,000 and according to proof at the time of trial.

**THIRD CAUSE OF ACTION**

**FAILURE TO REASONABLY ACCOMMODATE DISABILITY**

33. The plaintiff incorporates and realleges each and every allegation pleaded in Paragraphs 1 through 27, *supra*, and Paragraph 31, *infra* of this complaint.

34. The actions of Tesla and Sheik, as alleged herein, constitute Tesla's  unlawful failure to accommodate Plaintiff's reasonable request for disability accommodation in employment, in violation of the California Fair Employment and Housing Act, Government Code §§12900– 2996, as amended, causing plaintiff general and special damages in excess of $75,000 and according

**COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES**

to proof at the time of trial.

## FOURTH CAUSE OF ACTION

## FAILURE TO ENGAGE IN INTERACTIVE PROCESS

35. The plaintiff incorporates and realleges each and every allegation pleaded in Paragraphs 1 through 27, *supra*, and Paragraph 31, *infra* of this complaint.

36. The actions of Tesla and Sheik, as alleged in this complaint, constitute Tesla's unlawful failure to engage in an interactive process seeking to accommodate Plaintiff's reasonable request for a disability accommodation in employment, in violation of the California Fair employment and Housing Act, Government Code §§12900–12996, as amended, causing plaintiff general and special damages in excess of $75,000 and according to proof at the time of trial.

## FIFTH CAUSE OF ACTION

## UNLAWFUL EMPLOYMENT RETALIATION

37. The plaintiff incorporates and realleges each and every allegation pleaded in Paragraphs 1 through 27, *supra*, and Paragraph 31, *infra* of this complaint.

38. During the course of his employment, plaintiff engaged in multiple protected acts., including, but not limited to:

(a) Requesting Sheik and Tesla engage in an interactive process with him to seek to reasonably accommodate his disability;

(b) Requesting that, due to his temporary disability, he be permitted to remain seated rather than stand during company meetings;

(c) Seeking to transfer to another department or location so as not to be supervised by Skeik, whom plaintiff reasonably believed harbored dislike and animus towards him and persons with disabilities;

(d) Disagreeing with the contents and conclusions of one or more performance reviews of him by Skeik.

**COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES**

39. Solely motivated by Plaintiff having engaged in the foregoing protected acts, as well as other protected acts, Telsa and Sheik unlawfully took adverse employment actions against plaintiff, including, but not limited to:

(a) Verbally disparaging, criticizing and humiliating Plaintiff in the presence of his coworkers;

(b) Knowing that standing caused plaintiff severe pain and discomfort and that plaintiff could not stand for any length of time, Skeik cruelly, sadistically and vindictively and spitefully ordered one of Plaintiff's coworkers, Jeff Johnson, to remove Plaintiff's desk chair from his desk, making it impossible for Plaintiff was unable to sit, as he had requested on account of his disability;

(c) Making false, disparaging and misleading performance reviews of Plaintiff, making it impossible for Plaintiff to transfer to another job, location or position at Tesla, as he has attempted to do;

(d) Causing continued employment at Tesla while being supervised by Skeik to be impossible for Plaintiff without causing plaintiff further physical, emotional and psychological injury, forcing Plaintiff to resign his employment by Tesla.

40. The actions of Tesla and Sheik, as alleged in this complaint, constitute Tesla's unlawful workplace retaliation against plaintiff, in violation of California Labor Code §1102.5, causing plaintiff general and special damages in excess of $75,000 and according to proof at the time of trial.

## SIXTH CAUSE OF ACTION

## NEGLIGENT HIRING AND/OR RETENTION OF EMPLOYEE

41. The plaintiff incorporates and realleges each and every allegation pleaded in Paragraphs 1 through 27, *supra*, of this complaint.

42. At all times mentioned in this complaint, Tesla was under a duty to Plaintiffs and its other employees to not hire and/or retain employees whom it knew, or should

9

**COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES**

have known, would violate the rights of other Tesla employees, especially those employees with whose supervision they were charged.

43. Notwithstanding its foregoing duty to Plaintiff and others, Tesla knew or, with the exercise of reasonable diligence, should have known that Skeik was an employee who violated the civil and other rights of employees he supervised, including, without limitation, the rights of disabled employees and particularly including the rights of the Plaintiff.

44. Notwithstanding its foregoing duty to Plaintiff Tesla breached its duty to not hire or retain employees whom it knew, or should have known, would violate the rights of other Tesla employees, especially those employees with whose supervision they were charged, by hiring and retaining the employment of Skeik, who violated Plaintiff's rights as alleged in this complaint.

45. The negligent actions of Tesla, as alleged in this cause of action, caused plaintiff general and special damages in excess of $75,000 and according to proof at the time of trial.

## SEVENTH CAUSE OF ACTION
## WRONGFUL CONSTRUCTIVE TERMINATION

46. The plaintiff incorporates and realleges each and every allegation pleaded in Paragraphs 1 through 27, *supra*, of this complaint.

47. The actions of Tesla and Sheik, as alleged in this complaint, caused Plaintiffs to involuntarily resign from his employment by Tesla, constituting Tesla's unlawful constructive termination of Plaintiff's employment, causing plaintiff general and special damages in excess of $75,000 and according to proof at the time of trial.

**COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES**

## EIGHTH CAUSE OF ACTION

## WRONG CONSTRUCTIVE TERMINATION AGAINST PUBLIC POLICY

48. The plaintiff incorporates and realleges each and every allegation pleaded in Paragraphs 1 through 27, *supra*, of this complaint.

49. The constructive termination of plaintiff's employment by defendant violated California public policies created by a statute or regulation, to wit: the Fair Employment and Housing Act, Government Code §§ 12900–12996, as amended, Labor Code §1102.5, and Civil Code §17200.

50. Defendant is therefore liable to the plaintiff for all of plaintiff's damages proximately arising from the termination of his employment by defendant including, his actual damages, a civil penalty of $10,000 for each violation plaintiff's attorney fees incurred in bringing this action and costs as allowable by law.

## NINTH CAUSE OF ACTION

## VIOLATION OF BUSINESS & PROFESSIONS CODE SECTION 17200

51. The plaintiff incorporates and realleges each and every allegation pleaded in Paragraphs 1 through 27, *supra*, of this complaint.

52. The termination of plaintiff's employment by defendant was an "unlawful, unfair or fraudulent business act or practice" as set forth by Business and Professions Code §17200 in that it has prevented Plaintiff from engaging and pursuing the same or similar subsequent employment he had with Tesla with other employers.

53. Defendant is therefore liable to the plaintiff for all of plaintiff's harm and damages proximately arising from the termination of his employment by defendant including, his actual damages, and his attorney fees incurred in bringing this action.

**COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES**

## REQUEST FOR RELIEF

Plaintiff requests the following relief:

A. For a declaration and ruling of this court that Tesla has irrevocably waived its right to compel Plaintiff to arbitrate the claims asserted in this action and that this action may proceed in this court.

B. For general and special damages in excess of $75,000 and according to proof at trial;

C. For a civil penalty of $10,000 for each violation of the California Labor Code as herein alleged and according to proof;

D. For interest on such damages from the date of their incurrence;

E. For such other civil penalties and fines as may be applicable by law;

F. For plaintiff's reasonable attorney fees incurred in bringing this action.

G. .For plaintiff's costs incurred in this action as allowed by law.

Dated: October 10,  2023          THE JAFFE LAW FIRM

By:  /s/ Stephen R. Jaffe
Stephen R. Jaffe [CBN 49539]
ATTORNEYS FOR PLAINTIFF

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury.

Dated: October 10,  2023          THE JAFFE LAW FIRM

By:  /s/ Stephen R. Jaffe
Stephen R. Jaffe [CBN 49539]
ATTORNEYS FOR PLAINTIFF

**COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES**

EXHIBIT A

05/ 18/ 2020

Jorma Nottbohm
34 Union Sq #590
Union City, California 94587
United States of America

Dear Jorma:

Tesla, Inc. ("Tesla" or the "Company") is pleased to offer you the exempt, salaried position of Associate Service Manager, Front of House on the terms set forth below. As a Associate Service Manager, Front of House, you will perform the duties customarily associated with this position. You will report to Nina Mirani. Your duties, responsibilities, job title, and work location may be changed at any time by Tesla.

Your annualized salary will be US Dollar $115,000.00 per year, subject to standard payroll deductions and withholdings. As an exempt employee, you will not be entitled to overtime. You will be eligible for paid time off according to Tesla's standard policy. Subject to the rules of the applicable plan documents, you will also be eligible to receive other benefits Tesla may provide to its employees (e.g., health and dental insurance coverage) beginning on your date of hire. Tesla may consider you for bonuses, although the amount of such bonuses, if any, and the criteria for determining the award of such bonuses, if any, shall be in the sole discretion of Tesla. Of course, Tesla reserves the right to modify your compensation and benefits from time to time, without advance notice, as it deems necessary.

Tesla offers a competitive benefits package described below:

Equity Grant: Should you decide to accept the position, we will recommend to Tesla's Board of Directors, or committee thereof, that the Company grant you an equity award with the value of $ 110,000.00 in the form of Restricted Stock Units ("RSUs"), which will vest as described below. This value is determined based on our standard equity granting policies, as further described below. This award shall be subject to the terms and conditions of Tesla's 2019 Equity Incentive Plan and your Award Agreement, including vesting requirements.

Specifically, the RSUs shall vest over a period of four years as follows: twenty-five percent (25%) of the award shall vest on the first anniversary of the vesting start date (the first March 5, June 5, September 5 or December 5, as the case may be, after the end of the month in which you were hired, such date to be indicated in your Award Agreement) and six and twenty-five hundredths percent (6.25%) shall vest each quarter thereafter for the following twelve quarters , in each case subject to your continuing eligibility through the applicable vesting dates and subject to the terms of your Award Agreement. No RSUs shall vest other than on the first anniversary and twelve subsequent quarterly vest dates, and no right to any vesting shall be earned or accrued prior to such date.

New Equity Awards will be visible in E*Trade approximately eight weeks from your hire date. Grants are generally scheduled for approval on the 19th day of the month following your hire date. On the grant approval date, the average monthly market value of Tesla's stock price during month of hire is used to determine the number of shares granted (equity award value / average price), for RSU grants.

Please be aware that Tesla makes no representation about the future value of the equity award granted herein, and you should be aware that the value of this award will fluctuate in the future. Finally, the receipt of this award is subject to your signing the appropriate Award Agreement through the E*Trade portal.

401K Program: You will be eligible to participate in Tesla's 401K program after your first pay check. Our 401K program is

Flexible Time Off Program: To provide an opportunity to take time off from time to time, Tesla has adopted a flexible time off policy for U.S. exempt (salaried) employees. Instead of having a formal limit on the number of PTO days, or waiting to accrue vacation time, you will just schedule the time off with your manager.

The Company is excited about your joining and looks forward to a beneficial and fruitful relationship. Nevertheless, you should be aware that your employment with the Company is for no specified period and constitutes at-will employment. As a result, you are free to resign at any time, for any reason or for no reason, with or without notice. Similarly, the Company is free to conclude its employment relationship with you at any time, with or without cause, and with or without notice.

We ask that, if you have not already done so, you disclose to Tesla any and all agreements relating to your prior employment that may affect your eligibility to be employed by Tesla or limit the manner in which you may be employed. It is Tesla's understanding that any such agreements will not prevent you from performing the duties of your position and you represent that such is the case. We want to emphasize that we do not wish you to bring any confidential or proprietary materials of any former employer which would violate any obligations you may have to your former employer. You agree not to make any unauthorized disclosure to Tesla or use on behalf of Tesla any confidential information belonging to any of your former employers (except in accordance with agreements between Tesla and any such former employer). You also warrant that you do not possess any property containing a third party's confidential and proprietary information. Of course, during your employment with Tesla, you may make use of information generally known and used by persons with training and experience comparable to your own, and information which is common knowledge in the industry or is otherwise legally available in the public domain. Moreover, you agree that, during the term of your employment with the Company, you will not engage in any other employment, occupation, consulting or other business activity directly related to the business in which Tesla is now involved or becomes involved during the term of your employment, nor will you engage in any other activities that conflict with your obligations to Tesla.

As a Tesla employee, you will be expected to abide by all Tesla policies and procedures, and, as a condition of your employment, you will sign and comply with Tesla's standard confidentiality agreement which prohibits unauthorized use or disclosure of Tesla proprietary information or the confidential information of Tesla's clients.

In addition, to ensure the rapid and economical resolution of disputes that may arise in connection with your employment with Tesla, you and Tesla agree that any and all disputes, claims, or causes of action, in law or equity, arising from or relating to your employment, or the termination of your employment, will be resolved, to the fullest extent permitted by law by final, binding and private arbitration in your city and state of employment conducted by the Judicial Arbitration and Mediation Services/Endispute, Inc. ("JAMS"), or its successors, under the then current rules of JAMS for employment disputes; provided that:

a. Any claim, dispute, or cause of action between the partiesmust be brought in a party's individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding; and

b. The Parties agree that each may file claims against the other only in their individual capacities, and may not file claims as a plaintiff and/or participate as a representative in any representative action against the other, except to the extent this provision is unenforceable under the applicable law; and

c. The arbitrator shall have the authority to compel adequate discovery for the resolution of the dispute and to award such relief as would otherwise be permitted by law; and

d. The arbitrator shall not have the authority to consolidate the claims of other employees and shall not have the authority to fashion a proceeding as a class or collective action or to award relief to a group or class of employees in one arbitration proceeding; and

e. The arbitrator shall issue a written arbitration decision including the arbitrator's essential findings and conclusions and a statement of the award; and

f. Both you and Tesla shall be entitled to all rights and remedies that you or Tesla would be entitled to pursue in a court of law; and

g. Tesla shall pay all fees in excess of those which would be required if the dispute was decided in a court of law.

Nothing in this agreement is intended to prevent either you or Tesla from obtaining injunctive relief in court to prevent irreparable harm pending the conclusion of any such arbitration; thus, claims for temporary or emergency injunctive relief to preserve the status quo prior to and/or in aid of arbitration are permitted.

Arbitrable claims do not include, and this Agreement does not apply to or otherwise restrict, administrative claims you may bring before any government agency where, as a matter of law, the parties may not restrict your ability to file such claims (including discrimination and/or retaliation claims filed with the Equal Employment Opportunity Commission and unfair labor practice charges filed with the National Labor Relations Board). Otherwise, it is agreed that arbitration shall be the exclusive remedy for administrative claims. If one or more of the provisions in this arbitration agreement, or any portion thereof, are deemed invalid, unenforceable, or void under the Federal Arbitration Act or other applicable law, then the remaining provisions, or portions thereof, shall not thereby be affected and will continue in full force and effect, and shall be given full effect without regard to the invalid, unenforceable, or void provision, or portion thereof.

You acknowledge and agree that: (i) in the course of your employment by the Company, it will be necessary for you to create, use, or have access to (A) technical, business, or customer information, materials, or data relating to the Company's present or planned business that has not been released to the public with the Company's authorization, including, but not limited to, confidential information, materials, processes, systems, or proprietary data belonging to the Company or relating to the Company's affairs, which derive value from its non-public status (collectively, "Confidential Information") and (B) information and materials that concern the Company's business that come into the Company's possession by reason of employment with the Company (collectively, "Business Related Information"); (ii) all Confidential Information and Business Related Information are the property of the Company; (iii) the use, misappropriation, or disclosure of any Confidential Information or Business Related Information would constitute a breach of trust and could cause serious and irreparable injury to the Company; and (iv) it is essential to the protection of the Company's goodwill and maintenance of the Company's competitive position that all Confidential Information and Business Related Information be kept confidential and that you do not disclose any Confidential Information or Business Related Information to others or use Confidential Information or Business Related Information to your own advantage or the advantage of others.

In recognition of the acknowledgment above, you agree that until the Confidential Information and/or Business Related Information becomes publicly available (other than through a breach by you), you shall: (i) hold and safeguard all Confidential Information and Business Related Information in trust for the Company; (ii) not appropriate or disclose or make available to anyone for use outside of the Company's organization at any time any Confidential Information and Business Related Information, whether or not developed by you; (iii) keep in strictest confidence any Confidential Information or Business Related Information; (iv) not disclose or divulge, or allow to be disclosed or divulged by any person within your control, to any person, firm, or corporation, or use directly or indirectly, for your own benefit or the benefit of others, any Confidential Information or Business Related Information; and (v) upon the termination of your employment, return all Confidential Information and Business Records and not make or retain any copies or exacts thereof.

If you accept our offer, your first day of employment will be 06/ 29/ 2020. This letter agreement constitutes the complete, final and exclusive embodiment of the entire agreement between you and Tesla with respect to the terms and conditions of your employment, and it supersedes any other agreements or promises made to you by anyone, whether oral or written. This Agreement cannot be changed, amended, or modified except in a written agreement signed by an officer of Tesla. This letter agreement shall be construed and interpreted in accordance with the laws of the state in which you work.

As required by immigration law, this offer of employment is conditioned upon satisfactory proof of your right to work in the United States.

Employment at Tesla is conditioned upon, and thus subject to, pre-employment screenings for employment verification, background, and reference checks. Candidates for safety-sensitive positions and for work on certain projects, as well as employees working in those positions, are also subject to pre-employment drug and alcohol screening, and random and other (such as reasonable suspicion and/or post-accident) drug and alcohol screening during the course of employment at the Company. Certain positions may also require successful completion of a pre-employment physical examination, which is designed solely to determine your physical ability to safely perform the essential functions of the job with or without reasonable accommodation. The Company reserves the right to periodically conduct background checks throughout any employee's tenure in accordance with the Fair Credit Reporting Act and applicable federal, state and local laws, consistent

with business need. Your employment, therefore, is contingent upon a clearance of a background investigation, reference check, drug screen and/or physical examination, as applicable. In limited cases due to business necessity, the Company may permit a candidate to start work, contingent upon the successful completion or results of a background check and/or reference check (aka "contingent start"), in which case the individual's employment may be subject to termination if the Company receives negative information or results in connection with a background check or reference check, even where employment has conditionally begun pending the background or reference check results.

If you choose to accept our offer under the terms described above, please indicate your acceptance, by signing below and returning it to me prior to 06/ 22/ 2020 after which date this offer will expire.

We look forward to your favorable reply and to a productive and enjoyable work relationship.

Very truly yours,

Tesla, Inc.

Elon Musk

Accepted by:

Signature: _Jorma Nottbohm_

Name: Jorma Nottbohm
Date: Jun 18, 2020

Start Date:      06/ 29/ 2020

As explained in the Tesla offer letter, all offers of employment are contingent upon your ability to provide satisfactory proof of identity and work authorization for Form I-9, Employment Eligibility Verification. Federal law requires that Tesla have a valid Form I-9 on file for all employees.

To satisfy Form I-9 requirements, all employees must consult the USCIS List of Acceptable Documents and provide one document from List A OR one document from each List B and List C. As a general matter, List B documents must contain a photograph because Tesla is an E-Verify employer. All documents must be original and unexpired in order to be accepted. The employee must complete Section 1 of the Form I-9 on or before the first day of work for pay. Section 2 must be completed (with presentation of acceptable documents) within three business days of the first day of work for pay. Note that Tesla cannot legally make any exceptions to this timeline.

For payroll purposes only, Tesla requests that all new hires bring their documents on the first day of work. You will also have an opportunity to complete Form I-9 during New Hire Orientation. Your Form I-9 must be completed within three days of hire. If you fail to present the appropriate documents within three days of hire, Tesla is required to immediately terminate your employment.

By signing this addendum, you are acknowledging that you understand the Form I-9 requirements, the timeline to present, as well as the consequences for failure to present. If you suspect that you may have an issue presenting documents from the attached List of Acceptable Documents within the required period, we strongly encourage you to speak with your recruiter in advance of New Hire Orientation.

Note: If you are a foreign national who will be employed pursuant to a sponsored immigration status, you may not have the required documents at this time but should have such documents at the start of employment. Please contact immigration@tesla.com if you do not have your immigration status documents within a week of your scheduled start date.


Signature: _Jorma Nottbohm_

Name:  Jorma Nottbohm
Date:  Jun 18, 2020

Review the below and if you agree to the terms, select "I Agree" in Workday to indicate your acknowledgment. Note that selecting "I Agree" constitutes your
e-signature, which has the same legal effect as your handwritten signature.
Case 3:23-cv-05171   Document 1   Filed 10/10/23   Page 19 of 40

## TESLA, INC. EMPLOYEE NON- DISCLOSURE AND INVENTIONS ASSIGNMENT AGREEMENT

In consideration of my employment or continued employment by**TESLA, INC.** (collectively with its divisions, subsidiaries and affiliates, the **"Company"**) and the compensation now and hereafter paid to me, I agree as follows:

### 1.    PROPRIETARY INFORMATION.

At all times during my employment and thereafter, I will hold in strictest confidence and will not disclose, use, lecture upon or publish any of the Company's Proprietary Information (defined below), except as such disclosure, use or publication may be required in connection with my work for the Company, or unless an officer of the Company expressly authorizes such in writing. "**Proprietary Information**" shall mean all information, in whatever form and format, to which I have access by virtue of and in the course of my employment by the Company. Proprietary Information includes without limitation technical data, trade secrets, know-how, research and development, products, features, concepts, ideas, plans, designs, formulas, methods, processes, discoveries, improvements, source and object codes, data, programs, lists of or information relating to, suppliers, and customers, financial information and other business information, Inventions, and works of authorship. Notwithstanding the foregoing, Proprietary Information excludes any information that is or lawfully becomes part of the public domain. I agree that, in any dispute related to this Agreement, I will bear the burden of proving by clear and convincing evidence the applicability of this exclusion. This Agreement is intended to supplement, and not to supersede, any rights the Company may have in law or equity with respect to the protection of trade secrets or confidential or proprietary information.

### 2.    ASSIGNMENT OF INVENTIONS.

2.1    **Proprietary Rights.** The term "**Proprietary Rights**" shall mean all trade secret, patent, copyright, mask work, and other intellectual property rights throughout the world, including any registrations of or applications to register such rights.

2.2    **Moral Rights.** The term "**Moral Rights**" shall mean any rights to claim authorship of or credit on any Company Inventions (defined below), to object to or prevent the modification or destruction of any Company Inventions, or to withdraw from circulation or control the publication or distribution of any Company Inventions, and any similar right, existing under judicial or statutory law of any country or subdivision thereof in the world, or under any treaty, regardless of whether or not such right is denominated or generally referred to as a "moral right."

2.3    **Inventions.** The term "**Inventions**" shall mean any idea, concept, discovery, invention, development, research, technology, work of authorship, trade secret, software, firmware, content, audiovisual material, tool, process, technique, know-how, data, plan, device, apparatus, specification, design, prototype, circuit, layout, mask work, algorithm, program, code, documentation, or other material or information, tangible or intangible, whether or not it may be patented, copyrighted, trademarked, or otherwise protected (including all versions, modifications, enhancements, improvements, and derivative works thereof).

2.4    **Prior Inventions.** I have set forth on**Exhibit A, PRIOR INVENTIONS DISCLOSURE**, to this Agreement a complete list of all inventions that I have, alone or jointly with others, conceived, developed, or reduced to practice prior to the commencement of my employment with the Company, that I consider to be my property or the property of third parties and that I wish to have excluded from the scope of this Agreement (collectively referred to as "**Prior Inventions**"). If no such disclosure is attached, I represent that there are no Prior Inventions. If, in the course of my employment with the Company, I incorporate a Prior Invention into a Company product, process, or machine, the Company is hereby granted a nonexclusive, royalty-free, irrevocable, perpetual, worldwide license (with rights to sublicense through multiple tiers of sublicensees) to make, have made, modify, use, copy, distribute, and sell such Prior Invention. Notwithstanding the foregoing, I agree that I will not incorporate, or permit to be incorporated, Prior Inventions in any Company Inventions without the Company's prior written consent.

2.5    **California Employees Only - Labor Code Section 2870 Notice.** I have been notified and understand that the provisions of Section 2.6 of this Agreement do not apply to any Company Invention (defined below) that qualifies fully as a nonassignable invention under the provisions of Section 2870 of the California Labor Code, which states:

ANY PROVISION IN AN EMPLOYMENT AGREEMENT WHICH PROVIDES THAT AN EMPLOYEE SHALL ASSIGN, OR OFFER TO ASSIGN, ANY OF HIS OR HER RIGHTS IN AN INVENTION TO HIS OR HER EMPLOYER SHALL NOT

AN INVENTION THAT THE EMPLOYEE DEVELOPED ENTIRELY ON HIS OR HER OWN TIME WITHOUT USING THE

EMPLOYER'S EQUIPMENT, SUPPLIES, FACILITIES, OR TRADE SECRET INFORMATION EXCEPT FOR THOSE INVENTIONS THAT EITHER: (1) RELATE AT THE TIME OF CONCEPTION OR REDUCTION TO PRACTICE OF THE INVENTION TO THE EMPLOYER'S BUSINESS, OR ACTUAL OR DE- MONSTRABLY ANTICIPATED RESEARCH OR DEVELOPMENT OF THE EMPLOYER; OR (2) RESULT FROM ANY WORK PERFORMED BY THE EMPLOYEE FOR THE EMPLOYER. TO THE EXTENT A PROVISION IN AN EMPLOYMENT AGREEMENT PURPORTS TO REQUIRE AN EMPLOYEE TO ASSIGN AN INVENTION OTHERWISE EXCLUDED FROM BEING REQUIRED TO BE ASSIGNED UNDER CALIFORNIA LABOR CODE SECTION 2870(a), THE PROVISION IS AGAINST THE PUBLIC POLICY OF THIS STATE AND IS UNENFORCEABLE.

2.6     **Works for Hire; Assignment of Inventions**. I acknowledge and agree that all original works of authorship which are made by me (solely or jointly with others) within the scope of my employment and which are protectable by copyright are "works for hire" under the U.S. Copyright Act and that the Company will be considered the author and owner of such works. I further agree to assign, and do hereby assign, to the Company all my right, title and interest in and to any and all Inventions that (i) are developed using equipment, supplies, facilities, trade secrets, or Proprietary Information of the Company, (ii) result from work performed by me for the Company, or (iii) relate at the time of conception or reduction to practice of the invention to the Company's business, or actual or demonstrably anticipated research and development of the Company (the "Company Inventions"). I agree to assign, and do hereby irrevocably transfer and assign, to the Company all Proprietary Rights and Moral Rights in or with respect to any Company Inventions. I forever waive and agree never to assert any and all Moral Rights I may have in or with respect to any Company Inventions, even after termination of my work on behalf of the Company.

2.7     **Obligation to Keep Company Informed**. During the period of my employment and for twelve (12) months after the termination of my employment with the Company, I will promptly and fully disclose in writing to the Company all Inventions authored, conceived, or reduced to practice by me, either alone or jointly with others, in connection with, derived from, or as a result of the work performed by me during my employment with the Company, or any Proprietary Information to which I had access during or as a result of my employment with the Company. In addition, I acknowledge and agree that all patent applications for such Inventions that are filed by me or on my behalf, whether during my employment or after termination of my employment, are subject to this Agreement and belong to the Company.

California Employees Only: I agree that at the time of each such disclosure, I will advise the Company in writing of any Inventions that I believe fully qualify for protection under Section 2870 of the California Labor Code and will provide to the Company in writing all evidence necessary to substantiate that belief.

2.8     **Notice to Third Parties**. During and after the term of my employment, the Company may, with or without prior notice to me, notify third parties of my agreements and obligations under this Agreement.

2.9     **Assistance**. I agree to assist in every proper way and to execute those documents and to take such acts as are reasonably requested by the Company to obtain, sustain, and from time to time enforce patents, copyrights, and other rights and protections relating to Company Inventions in the United States or any other country. I hereby irrevocably designate and appoint the Secretary of the Company as my attorney-in-fact, which appointment is coupled with an interest, to act for and in my behalf to execute, verify, and file any such documents and to do all other lawfully permitted acts to further the purposes of this paragraph with the same legal force and effect as if executed by me. My obligations under this paragraph will continue beyond the termination of my employment with the Company for any reason, provided that the Company will compensate me at a reasonable rate after such termination for time or expenses actually spent by me at the Company's request on such assistance.

3.     **RECORDS.**

I agree to keep and maintain adequate and current written records of all Inventions made by me during the period of my employment at the Company, which records shall be available to and remain the sole property of the Company at all times. I will promptly disclose all such Inventions in writing to the Company and will supplement any such disclosures to the extent the Company may request. If I have any doubt as to whether or not to disclose an Invention to the Company, I will disclose it.

Upon the termination of my employment for any reason, or at such earlier time as the Company may request, I shall immediately return to the Company all originals and copies of all hard copy and electronic documents, files and other property of the Company in my possession or control or to which I may have access, including all records referred to in Section 3 above, regardless of the storage medium (e.g., internal or external hard drives, solid-state drives, USB flash drives, flash memory cards, and cloud storage).

## 5. NO CONFLICTING OBLIGATIONS.

I represent that my performance of this Agreement and as an employee of the Company does not and will not breach any agreement to keep in confidence information acquired by me in confidence or in trust prior to my employment by the Company. Without limiting the foregoing, I agree that during my employment by the Company I will not improperly use or disclose any confidential information or trade secrets of any former employer or any other person to whom I have an obligation of confidentiality; I will not bring onto the premises of the Company any unpublished documents or any property belonging to any former employer or any other person to whom I have an obligation of confidentiality unless consented to in writing by that former employer or person; and I will use in the performance of my duties only information which is generally known and used by persons with training and experience comparable to my own, is common knowledge in the industry or otherwise in the public domain, or is otherwise provided or developed by the Company. I have not entered into and will not enter into any agreement or understanding, either written or oral, in conflict herewith.

## 6. LEGAL AND EQUITABLE REMEDIES.

I acknowledge and agree that violation of this Agreement by me may cause the Company irreparable harm and that the Company shall therefore have the right to enforce this Agreement and any of its provisions by injunction, specific performance, or other equitable relief, without bond and without prejudice to any other rights and remedies that the Company may have for a breach of this Agreement.

## 7. NOTICES.

Any notices required or permitted hereunder shall be given to the appropriate party at the address specified below or at such other address as the party shall specify in writing. Such notice shall be deemed given upon personal delivery to the appropriate address or, if sent by certified or registered mail, three (3) days after the date of mailing.

## 8. EMPLOYMENT.

I understand and agree that nothing in this Agreement shall confer any right with respect to continuation of employment, nor shall it interfere in any way with my right or the Company's right to terminate my employment at any time, with or without cause.

## 9. NON-SOLICITATION.

9.1    During and after the termination of my employment with the Company, I will not directly or indirectly solicit or otherwise take away customers or suppliers of the Company if, in so doing, I use or disclose any of the Company's trade secrets, including without limitation the non-public names and addresses of the Company's customers and suppliers and/or other confidential information related to them, including their buying and selling habits and special needs.

9.2    I acknowledge that the Company has invested, and will continue to invest, significant time and money to recruit and retain its employees. I recognize that in the course of my employment I have obtained or will obtain valuable information about the Company's employees and contractors, and their respective talents and areas of expertise.

9.2.1    I agree that during the term of my employment and for twelve (12) months thereafter, I will not directly or indirectly, for my own account or for others, solicit (or assist another in soliciting) for employment or for the performance of services any Company employee or contractor with whom I had contact or of whom I became aware during the period of my employment. Nor will I, for my account or for others, in any way induce or attempt to induce any such individual to terminate his or her employment by or performance of services for the Company.

9.2.2    During and after the termination of my employment with the Company, I will not directly or indirectly hire or otherwise take away any of the Company's employees (as an employee or an independent contractor) if, in so doing, I use or disclose any of the Company's trade secrets, including without limitation the non-public names and addresses of the

Company's employees and/or other confidential information related to them, including their skills, experience, current projects or assignments for the Company and specialized experience in Company technology and inventions.

## 10.    18 U.S.C. § 1833 NOTICE

I have been given notice of the immunity provided by 18 U.S.C. § 1833(b)(1), which provides:

*IMMUNITY. An individual shall not be held criminally or civilly liable under any Federal or State trade secret law for the disclosure of a trade secret that (A) is made-*

*(i) in confidence to a Federal, State, or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (B) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal.*

## 11.    GENERAL PROVISIONS.

11.1    This Agreement will be governed by and construed according to the laws of the county and state in which I am primarily assigned to work in by Company. I agree to submit to the jurisdiction of, and the exclusive jurisdiction over and venue for any action or proceeding arising out of or relating to this Agreement shall lie, in the state and federal courts located in the county and state in which you are primarily assigned to work in by Company.

11.2    If any provision of this Agreement is found to be excessively broad as to duration, geographical scope, activity or subject, such provision shall be construed or reformed by limiting and reducing it to the extent required to render it enforceable under applicable law. If any provision of this Agreement is found to be invalid, illegal or unenforceable and cannot be construed so as to render it enforceable, such invalidity, illegality or unenforceability shall not affect any other provision of this Agreement, and this Agreement shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein. Nothing in this Agreement is intended to restrict, or shall be interpreted as restricting, my right to engage in activity protected by Section 7 of the National Labor Relations Act or any other applicable state or federal law. Neither this Agreement nor the confidentiality provisions contained in any other existing employment related document between me and the Company shall be construed to prohibit or otherwise restrict me, as an employee of Company from lawfully reporting waste, fraud, or abuse to a designated investigative or law enforcement representative of a federal department or agency authorized to receive such information under any procurement contract.

11.3    The provisions of this Agreement shall survive the termination of my employment and the assignment of this Agreement by the Company to any successor in interest or other assignee. This Agreement will be binding upon my heirs, executors, administrators and other legal representatives and will be for the benefit of the Company, its successors, and its assigns. The Company may assign any of its rights or obligations under this Agreement.

11.4    No waiver by the Company of any breach of this Agreement shall be a waiver of any preceding or succeeding breach. No waiver by the Company of any right under this Agreement shall be construed as a waiver of any other right.

11.5    This Agreement is the final, complete and exclusive agreement of the parties with respect to the subject matter hereof and supersedes and merges all prior or contemporaneous discussions or agreements between us regarding such subject matter. No modification of or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing and signed by the party to be charged.

11.6    Any subsequent change or changes in my duties, salary or compensation will not affect the validity or scope of this Agreement. This Agreement shall be effective as of the first day of my employment with the Company.

Dated:   Jun 18, 2020


Signature: *Jorma Nottbohm*


Name:  Jorma Nottbohm


Address:  34 Union Sq #590, Union City CA 94587

TO:    Tesla, Inc.

FROM:  Jorma Nottbohm

DATE:  Jun 18, 2020

SUBJECT: Prior Invention

1.    Except as listed in Section 2 below, the following is a complete list of all inventions or improvements that have been made or conceived or first reduced to practice by me alone or jointly with others prior to my engagement by the Company:


Additional sheets to attach:

YES ○              NO ○

Additional documents should be emailed to HR@tesla.com on or before your start date

2.    Due to a prior confidentiality agreement, I cannot complete the disclosure under Section 1 above with respect to inventions or improvements generally listed below, the proprietary rights and duty of confidentiality with respect to which I owe to the following party(ies):

1.  Invention or Improvement:
    Party(ies):

    Relationship:

2.  Invention or Improvement:
    Party(ies):

    Relationship:

3.  Invention or Improvement:
    Party(ies):

    Relationship:

Additional sheets to attach:

YES ○              NO ○

Additional documents should be emailed to HR@tesla.com on or before your start date

*** **WARNING** - If you sign (or eSign) this document and do **not** fill in anything in sections 1 or 2 on Exhibit A, we assume that you do not have any inventions.

EXHIBIT B

Demand Ref# 5100000746 Location: San Francisco,

**DEMAND FOR ARBITRATION FORM**

## JAMS Local Center

### 1. JAMS Local Center

JAMS resolution center          Requested Hearing Location

San Francisco, California

Arbitration Rules

JAMS Employment Arbitration Rules and Procedures

**Filing & submission fees**

**Standard Arbitration**

Other – if the parties' agreement calls for a different amount for consumer or employee to pay.

---

Claimant(s)

1. Jorma Nottbohm
   c/o The Jaffe Law Frim
   1 Sansome Street, Suite 3500
   94104 San Francisco CA
   4156180100
   stephen.r.jaffe@jaffetriallaw.com

Claimant Representatives

A. Stephen Jaffe
   The Jaffe Law Firm
   49539CA
   1 Sansome Street, Suite 3500
   94104 San Francisco CA
   415-618-0100
   stephen.r.jaffe@jaffetriallaw.com

---

Respondent(s)

1. Tesla, Inc.
   CA

Respondent Representatives

---

### 4. Nature of Dispute

If mediation in advance of the arbitration is desired, please check here and a JAMS Case Manager will assist the parties in coordinating a mediation session.

disability discrimination; failure to accommodate disability; wrongful termination; wrongful termination (constructive); wrongful termination in violation of public policy; violations of business and professions cod section 17200. Claimant seeks special and general damages

PREVIOUS

Amount in Controversy $900,000.00

**DEMAND FOR ARBITRATION FORM**

## JAMS Local Center

### 5. Agreement

You haven't provided the arbitration provision yet.

☐ By checking the box to the left, Claimant requests that the Expedited Procedures described in JAMS Comprehensive Rules 16.1 and 16.2 be applied in this matter. Respondent shall indicate not later than seven (7) days from the date this Demand is served whether it agrees to the Expedited Procedures.

### 6. Consumer & Employment

Decline to state

### 7. Submission information

Name Stephen Jaffe                    Phone 4156180080

Address 1 Sansome Street, Suite 3500    E-mail stephen.r.jaffe@jaffetriallaw.com

Zip Code 94104

City San Francisco

State CA

☐ I Agree to the Terms of Service

EXHIBIT C

 Gmail

**stephen jaffe <stephen.r.jaffe@jaffetriallaw.com>**

---

### Fwd: CONFIRMATION: DEMAND SUBMISSION
1 message

---

**stephen jaffe** <stephen.r.jaffe@jaffetriallaw.com>                      Mon, Nov 7, 2022 at 10:29 AM
To: Alif Mia <amia@tesla.com>
Bcc: Jorma Nottbohm <NOTTBOHM@gmail.com>

Counsel:

Mr. Nottbohm has initiated an arbitration proceeding against Tesla.  See
forwarded documentation below.  This email constitutes service of that
arbitration proceeding on Tesla.

*Stephen Jaffe*

**stephen.r.jaffe@jaffetriallaw.com**
**THE JAFFE LAW FIRM**
**+1 (415) 618-0100**
Don't confuse kindness for weakness or understanding for agreement.
This email is for the confidential use of the addressee(s).  Receipt of or sending email to The Jaffe Law Firm does not constitute an agreement to represent
any person or entity. No attorney-client relationship will exist without a written attorney-client agreement between The Jaffe Law Firm and a client.

---------- Forwarded message ---------
From: <noreply@jamsaccess.com>
Date: Mon, Nov 7, 2022 at 10:21 AM
Subject: CONFIRMATION: DEMAND SUBMISSION
To: <stephen.r.jaffe@jaffetriallaw.com>

## CONFIRMATION: DEMAND SUBMISSION

Your demand for arbitration was received. The reference number
for this matter is **#5100000746** .

**Please note that this demand, including any/all attachments,
must be served on all parties. Once you have served the
demand, a copy of the proof of service must be provided to
JAMS. Click here to upload the proof of service to JAMS
Access.**

Below you will have access to the full submitted information as well as **all uploaded documents.**

LOGIN TO SEE CASE SUBMISSION

## Submission Information

STEPHEN JAFFE

1 Sansome Street, Suite 3500

4156180080
stephen.r.jaffe@jaffetriallaw.com

**JAMS Resolution Center**

San Francisco, California

**Requested Hearing Location**

**Arbitration Rules**

JAMS Employment Arbitration Rules and Procedures

**Filling & Submission Fees Details:**

Other – if the parties' agreement calls for a different amount for consumer or employee to pay.

Consumer or Employment Arbitration

| **Claimants** | **Claimant Representative(s)** |
|---|---|
| **1.** Jorma Nottbohm<br>c/o The Jaffe Law Frim<br>1 Sansome Street, Suite 3500<br>94104 CA San Francisco<br>4156180100<br>stephen.r.jaffe@jaffetriallaw.com | **A.** Stephen Jaffe<br>The Jaffe Law Firm<br>49539CA<br>1 Sansome Street, Suite 3500<br>94104 CA San Francisco<br>415-618-0100<br>stephen.r.jaffe@jaffetriallaw.com |

| **Respondent(s)** | **Respondent Representative(s)** |
|---|---|
| **1.** Tesla, Inc.<br>CA | |

## Nature of Dispute

**Mediation in advance of the arbitration is desired.**

disability discrimination; failure to accommodate disability; wrongful termination; wrongful termination (constructive); wrongful termination in violation of public policy; violations of business and professions cod section 17200. Claimant seeks special and general damages, litigation costs and expenses and attorney fees.

**Amount in Controversy (U.S. dollars)** 900,000.00

**Proof of service of the demand on the appropriate party**

**Employment Letter.pdf** Exhibits

## Agreement

N

**Claimant requests that the Expedited Procedures described in JAMS Comprehensive Rules 16.1 and 16.2 be applied in this matter. Respondent shall indicate not later than seven (7) days from the date this Demand is served whether it agrees to the Expedited Procedures. Proof of service of the demand on the appropriate party**

## Consumer & Employment

Please do not reply directly to this email as you will not receive a response. For assistance, please visit our Contact Us center at access.jamsadr.com/support or call your Case Manager

EXHIBIT D

 Gmail

stephen jaffe <stephen.r.jaffe@jaffetriallaw.com>

---

**Fwd: CONFIRMATION: DEMAND SUBMISSION**
1 message

**stephen jaffe** <stephen.r.jaffe@jaffetriallaw.com>                 Mon, Nov 7, 2022 at 10:29 AM
To: Alif Mia <amia@tesla.com>
Bcc: Jorma Nottbohm <NOTTBOHM@gmail.com>

Counsel:

Mr. Nottbohm has initiated an arbitration proceeding against Tesla.  See
forwarded documentation below.  This email constitutes service of that
arbitration proceeding on Tesla.

*Stephen Jaffe*

**stephen.r.jaffe@jaffetriallaw.com**
**THE JAFFE LAW FIRM**
**+1 (415) 618-0100**
Don't confuse kindness for weakness or understanding for agreement.
This email is for the confidential use of the addressee(s).  Receipt of or sending email to The Jaffe Law Firm does not constitute an agreement to represent
any person or entity. No attorney-client relationship will exist without a written attorney-client agreement between The Jaffe Law Firm and a client.

--------- Forwarded message ---------
From: <noreply@jamsaccess.com>
Date: Mon, Nov 7, 2022 at 10:21 AM
Subject: CONFIRMATION: DEMAND SUBMISSION
To: <stephen.r.jaffe@jaffetriallaw.com>

## CONFIRMATION: DEMAND SUBMISSION

Your demand for arbitration was received. The reference number
for this matter is **#5100000746** .

**Please note that this demand, including any/all attachments,
must be served on all parties. Once you have served the
demand, a copy of the proof of service must be provided to
JAMS. Click here to upload the proof of service to JAMS
Access.**

Below you will have access to the full submitted information as well as **all uploaded documents.**

LOGIN TO SEE CASE SUBMISSION

## Submission Information

STEPHEN JAFFE

1 Sansome Street, Suite 3500

4156180080
stephen.r.jaffe@jaffetriallaw.com

**JAMS Resolution Center**

San Francisco, California

**Requested Hearing Location**

**Arbitration Rules**

JAMS Employment Arbitration Rules and Procedures

**Filling & Submission Fees Details:**

Other – if the parties' agreement calls for a different amount for consumer or employee to pay.
Consumer or Employment Arbitration

| Claimants | Claimant Representative(s) |
|---|---|
| **1.** Jorma Nottbohm<br>c/o The Jaffe Law Frim<br>1 Sansome Street, Suite 3500<br>94104 CA San Francisco<br>4156180100<br>stephen.r.jaffe@jaffetriallaw.com | **A.** Stephen Jaffe<br>The Jaffe Law Firm<br>49539CA<br>1 Sansome Street, Suite 3500<br>94104 CA San Francisco<br>415-618-0100<br>stephen.r.jaffe@jaffetriallaw.com |

| Respondent(s) | Respondent Representative(s) |
|---|---|
| **1.** Tesla, Inc.<br>CA | |

## Nature of Dispute

**Mediation in advance of the arbitration is desired.**

disability discrimination; failure to accommodate disability; wrongful termination; wrongful termination (constructive); wrongful termination in violation of public policy; violations of business and professions cod section 17200. Claimant seeks special and general damages, litigation costs and expenses and attorney fees.

**Amount in Controversy (U.S. dollars)**   900,000.00

**Proof of service of the demand on the appropriate party**

Employment Letter.pdf                                                   Exhibits

## Agreement

N

Claimant requests that the Expedited Procedures described in JAMS Comprehensive Rules 16.1 and 16.2 be applied in this matter. Respondent shall indicate not later than seven (7) days from the date this Demand is served whether it agrees to the Expedited Procedures. **Proof of service of the demand on the appropriate party**

## Consumer & Employment

Please do not reply directly to this email as you will not receive a response. For assistance, please visit our Contact Us center at access.jamsadr.com/support or call your Case Manager

EXHIBIT E

 Gmail

**stephen jaffe <stephen.r.jaffe@jaffetriallaw.com>**

---

## Nottbohm v. Tesla, Inc.
1 message

---

**Timothy Kim** <timkim@tesla.com>                                        Wed, Dec 21, 2022 at 4:27 PM
To: "stephen.r.jaffe@jaffetriallaw.com" <stephen.r.jaffe@jaffetriallaw.com>
Cc: "George Huggins Jr." <ghugginsjr@tesla.com>

Counsel:

I'm reaching out to you regarding the Nottbohm v. Tesla matter.  Please be advised that I will be representing Tesla on this matter as lead counsel, and ask that you direct all case correspondence to me and Mr. Huggins (who is also copied on this email).  Thanks.

Timothy T. Kim

Counsel, Employment Litigation

901 Page Avenue, Fremont, CA 94538

T Ξ 5 L π

The content of this message is the proprietary and confidential property of Tesla, Inc. and should be treated as such. If you are not the intended recipient and have received this message in error, please delete this message from your computer system and notify me immediately by reply e-mail. Any unauthorized use or distribution of the content of this message is prohibited. Thank you.

Please consider the environment before printing this email.

EXHIBIT F

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR

## Civil Rights Department

KEVIN KISH, DIRECTOR

2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 (voice) | 800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

October 9, 2023

Jorma Nottbohm
c/o Jaffe Law Firm
1 Sansome St. Suite 3500
San Francisco, CA 94104

RE:   **Notice of Case Closure and Right to Sue**
      CRD Matter Number: 202310-22261209
      Right to Sue: Nottbohm / Tesla, Inc.

Dear Jorma Nottbohm:

This letter informs you that the above-referenced complaint filed with the Civil Rights Department (CRD) has been closed effective October 9, 2023 because an immediate Right to Sue notice was requested.

This letter is also your Right to Sue notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

To obtain a federal Right to Sue notice, you must contact the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this CRD Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,

Civil Rights Department

CRD - ENF 80 RS (Revised 02/23)

# COMPLAINT OF EMPLOYMENT DISCRIMINATION
## BEFORE THE STATE OF CALIFORNIA
### Civil Rights Department
## Under the California Fair Employment and Housing Act
### (Gov. Code, § 12900 et seq.)

**In the Matter of the Complaint of**

Jorma Nottbohm

CRD No. 202310-22261209

Complainant,

vs.

Tesla, Inc.
901 Page Avenue
Fremont, CA 94538

Respondents

---

**1.** Respondent **Tesla, Inc.** is an **employer** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

**2.** Complainant **Jorma Nottbohm**, resides in the City of **San Francisco,** State of **CA.**

**3.** Complainant alleges that on or about **June 30, 2022**, respondent took the following adverse actions:

**Complainant was harassed.**

**Complainant was discriminated against** because of complainant's other, disability (physical, intellectual/developmental, mental health/psychiatric) and as a result of the discrimination was forced to quit, reprimanded, other, denied accommodation for a disability.

**Complainant experienced retaliation** because complainant reported or resisted any form of discrimination or harassment, requested or used a disability-related accommodation, requested or used family care and medical leave (cfra) related to serious health condition of employee or family member, child bonding, or military exigencies and as a result was forced to quit, reprimanded, denied accommodation for a disability.

**Additional Complaint Details:**

-1-

*Complaint – CRD No. 202310-22261209*

Date Filed: October 9, 2023

CRD-ENF 80 RS (Revised 12/22)

VERIFICATION

I, **Stephen R. Jaffe**, am the **Attorney** in the above-entitled complaint. I have read the foregoing complaint and know the contents thereof. The matters alleged are based on information and belief, which I believe to be true.

On October 9, 2023, I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**San Francisco, CA**

-2-
*Complaint – CRD No. 202310-22261209*

Date Filed: October 9, 2023

CRD-ENF 80 RS (Revised 12/22)